Case 1:21-cv-01186-LJV    Document 34    Filed 09/03/24    Page 1 of 10



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------------------

ISAIAH THOMAS NEW,
Plaintiff,

-against- :

M&T BANK CORPORATION,
ARTHUR SALMAN, FRANCISCO TORRES,
and DOES 1-10, inclusive
Defendants

----------------------------------------------------------------

SECOND AMENDED COMPLAINT

JURY TRIAL DEMANDED

Plaintiff ISAIAH THOMAS NEW ("Plaintiff"), as and for his Second Amended Complaint against Defendants M&T Bank Corporation ("M&T Bank"), Arthur Salman ("Salman"), Francisco Torres ("Torres"), and Does 1-10, inclusive (collectively, "Defendants"), alleges as follows:

NATURE OF THE ACTION

1. This is an action seeking to rescind a separation agreement and release (the "Agreement") signed by Plaintiff under duress, undue influence, and fraudulent inducement, and to recover for race discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL").
2. Plaintiff, an African American man, was subjected to a severe and pervasive campaign of racial harassment while employed by Defendant M&T Bank, including degrading verbal harassment and stripping of his job duties by his direct supervisor, mocked as "brown-noser," and having white employees congregate around Plaintiff's cubicle to compare Black athletes to slaves being sold at auction to uproarious rounds of laughter by other employees, all of whom were white, on Plaintiff's floor at M&T Corporate Headquarters. When Plaintiff complained about this and other abuse to M&T Bank's Human Resources department, Defendants retaliated against him by terminating his employment.
3. Defendants, through M&T Bank's veteran employment and HR lawyer Salman, then coerced Plaintiff, who was unrepresented and suffering from a diagnosed anxiety disorder, to sign an agreement releasing his civil rights claims by locking him in a room against his will and misrepresenting that his reports, and therefore discrimination claims

of which Plaintiff had no knowledge, were meritless and imaginary, "all in [Plaintiff's] head," despite Salman having highly detailed knowledge of Plaintiff's numerous complaints from prior meetings. Plaintiff signed the Agreement under duress and in reliance on Salman's fraudulent misrepresentations.

4. Plaintiff seeks a declaratory judgment that the Agreement is void and unenforceable due to duress, undue influence, and fraudulent inducement, as well as damages for Defendants' discriminatory, retaliatory and fraudulent conduct under federal, state and common law.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII and Section 1981. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and common law pursuant to 28 U.S.C. § 1367(a).
6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

7. Plaintiff ISAIAH THOMAS NEW is a resident of the State of New York, County of Erie. At all relevant times, Plaintiff was an "employee" within the meaning of Title VII, Section 1981, and the NYSHRL.
8. Defendant M&T Bank is a foreign business corporation with its headquarters located at One M&T Plaza, Buffalo, New York 14203. At all relevant times, M&T Bank was an "employer" within the meaning of Title VII, Section 1981, and the NYSHRL.
9. Defendant Arthur Salman is a resident of the State of New York and at all relevant times was employed as an HR lawyer and employee relations manager for M&T Bank. Salman had supervisory authority over Plaintiff with respect to investigating his complaints of discrimination and effectuating his termination.
10. Defendant Francisco Torres is a resident of the State of New York and at all relevant times was employed as legal counsel for M&T Bank. Torres participated in meetings regarding Plaintiff's complaints of discrimination and advised M&T Bank and Salman with respect to Plaintiff's termination.
11. Defendants Does 1-10 are individuals employed by M&T Bank who participated in the discriminatory and retaliatory conduct towards Plaintiff and whose identities are unknown to Plaintiff at this time.

## FACTUAL ALLEGATIONS

12. Plaintiff, an African American man, was hired by M&T Bank in 2017 in the bank's Buffalo, New York headquarters.
13. From the start of his employment, Plaintiff was subjected to severe and pervasive racial harassment by his white colleagues at M&T Bank. Plaintiff's direct supervisor, who is

white, repeatedly called denigrated and verbally harassed Plaintiff in front of other employees.
14. In one particularly egregious incident the day after Martin Luther King Jr. Day in January 2018, a group of white male employees gathered around Plaintiff's cubicle and compared Black athletes to slaves being sold at auction, laughing and yelling "SOLD!"
15. Plaintiff made multiple complaints to M&T Bank's HR department about the behavior he noticed at work. In February 2018, Plaintiff met with Defendant Salman, an HR lawyer, to report the "slave auction" incident and other harassment by his supervisor and colleagues.
16. At the end of April 2018, Plaintiff again met with Salman to complain about ongoing conduct at work. This time, Defendant Torres, an in-house lawyer for M&T Bank, also attended the meeting and took detailed notes as Plaintiff described the conduct.
17. Just a few weeks after making his protected complaints to HR, in June 2018, Plaintiff was abruptly terminated by M&T Bank in a meeting orchestrated by Salman.
18. During this meeting, Salman confined Plaintiff to a conference room and told him he could not leave until he signed a separation agreement waiving his right to sue M&T Bank. Plaintiff was forced to sit in the room for hours while his white colleagues packed up his personal belongings at his desk. Plaintiff was the only black employee on the 100-person floor of M&T Bank's Corporate Headquarters.
19. Salman falsely told Plaintiff that his complaints were "all in his head" and had no merit. This was a knowingly false statement, as Salman had attended multiple meetings with Plaintiff where he reported specific, egregious acts of racial harassment, which Torres and Salman had documented and investigated.
20. Salman and the bank's conduct during this termination meeting was part of a deliberate attempt to coerce Plaintiff into signing the separation agreement by creating an atmosphere of intimidation and racial humiliation. By forcing Plaintiff to watch as white employees packed up his belongings, Defendants underscored the threat that Plaintiff had no choice but to accept his termination and sign the agreement. Multiple Plaintiff files went missing.
21. After several hours of being confined to the conference room and berated by Salman and managers, Plaintiff was escorted out of the building. Plaintiff, who was experiencing severe anxiety and emotional distress, did not sign the separation agreement that day.
22. However, over the next two weeks, Salman continued to pressure Plaintiff to sign the agreement by email and by phone. In one email two weeks after termination and escort out of M&T Bank, Salman wrote "any word on this, Isaiah?" and urged Plaintiff by phone to sign, telling Plaintiff directly that "Hodgson Russ and M&T have a very close relationship, and [they] used to have an office inside M&T Bank Headquarters." These actions caused Plaintiff duress. Hodgson Russ is Buffalo's largest law firm. They now represent Defendant M&T Bank in this action.
23. During this two-week period, Plaintiff was experiencing severe anxiety and depression as a result of his abusive treatment at M&T Bank. Plaintiff had previously been diagnosed with Generalized Anxiety Disorder and had been prescribed an anxiolytic to treat panic attacks related to the racial harassment at work. M&T Bank was fully aware

     of Plaintiff's disability, as he had requested accommodations under the Americans with Disabilities Act.

24. In June 2018, Plaintiff, who was still unrepresented and under severe financial and emotional strain, signed the separation agreement minutes after Salman initiated the aforementioned contact (paragraph 22), which provided a severance of two months' pay in exchange for a general release of claims. Plaintiff signed the agreement in reliance on Salman's repeated misrepresentations that his discrimination claims were meritless.
25. In February 2021, Plaintiff read a news article about a case in which an African American employee at a different company experienced similarly severe and pervasive conduct similar to that experienced by Plaintiff at M&T Bank, about which Salman later misrepresented to Plaintiff under duress. The article reported that the employee had successfully sued the employer in federal court for race discrimination under federal and state law, in a verdict upheld by a jury of his peers.
26. After reading this article and the stark similarities in the treatment of another black employee in a corporate environment, Plaintiff promptly contacted M&T Bank to rescind the agreement and tender back the severance pay he had received.

FIRST CAUSE OF ACTION
(Rescission of Agreement Due to Duress)

27. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in paragraphs "1" through "26", inclusive, as if fully set forth herein.
28. Plaintiff signed the separation agreement with M&T Bank under duress, as he was subjected to extreme and wrongful pressure by Defendants, including being confined to a room for hours, told he could not leave, and coerced until he signed the agreement up to the day of signing.
29. Defendants' coercive tactics, which included forcing Plaintiff to watch as white employees packed up his personal belongings and took his files including email from HR and his benefit plan among others, and escorting him out of the building, deprived Plaintiff of the meaningful ability to exercise his free will in signing the agreement.
30. Although Plaintiff did not sign the agreement until two weeks after first being pressured to do so, the effects of the initial duress, combined with Salman's ongoing coercion by email and by phone, had a continuing impact on Plaintiff's free will, as demonstrated by his severe anxiety and depression during this period.
31. Plaintiff, who was not represented by counsel and was particularly vulnerable due to his known anxiety disorder, promptly sought to rescind the agreement upon realizing it was the product of duress.
32. Based on the foregoing, the separation agreement is voidable and should be rescinded.

SECOND CAUSE OF ACTION
(Rescission of Agreement Due to Undue Influence)

33. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in paragraphs "1" through "32", inclusive, as if fully set forth herein.

34. Plaintiff signed the separation agreement with M&T Bank under undue influence, as Defendants exploited Plaintiff's known anxiety disorder and fragile emotional state to pressure him to release his discrimination claims.
35. Defendants, through Salman, deliberately took advantage of Plaintiff's vulnerability and lack of representation to create a coercive environment that broke down Plaintiff's ability to resist their pressure tactics.
36. Salman's conduct during the termination meeting, including locking Plaintiff in a room and demeaning him for hours, was calculated to overwhelm Plaintiff's free will and induce him to sign the agreement without fully understanding its consequences.
37. Plaintiff, who was experiencing severe anxiety and depression, was particularly susceptible to Defendants' undue influence, as they were fully aware based on Plaintiff's prior requests for disability accommodations.
38. Plaintiff promptly sought to rescind the agreement upon realizing it was the product of Defendants' undue influence and to tender back the consideration received.
39. Based on the foregoing, the separation agreement is voidable and should be rescinded.

THIRD CAUSE OF ACTION
(Rescission of Agreement Due to Fraudulent Inducement)

40. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in paragraphs "1" through "39", inclusive, as if fully set forth herein.
41. Plaintiff signed the separation agreement with M&T Bank in reliance on fraudulent misrepresentations by Defendants regarding the validity of his discrimination claims.
42. During the June 2018 termination meeting, Salman falsely told Plaintiff that his complaints of racial harassment were "all in his head" and had no legal merit. This was not a mere opinion, but a knowingly false statement of fact.
43. As an HR lawyer, Salman had attended multiple meetings with Plaintiff in which he reported specific, egregious acts of racial discrimination, which were documented by M&T Bank's legal counsel Torres. Salman therefore knew that Plaintiff's complaints were supported by concrete evidence and had a valid legal basis after having investigated them himself. Salman informed Plaintiff's "chain of command," and noted they approved his termination. This chain of command includes Rene Jones, M&T Bank Chief Executive, who castigated Plaintiff for his reports to HR.
44. Salman made these misrepresentations with the intent of deceiving Plaintiff into believing he had no viable legal claims against M&T Bank and inducing him to sign the separation agreement releasing those claims.
45. As an unrepresented employee who had been subjected to severe racial abuse and was now being pressured to sign an agreement in a highly coercive environment, Plaintiff reasonably relied on Salman's fraudulent statements about the validity of his claims.
46. Plaintiff suffered damages as a result of his reliance on Salman's misrepresentations, as he was fraudulently induced to waive all rights to pursue well-founded race discrimination and retaliation claims against M&T Bank.
47. Plaintiff promptly sought to rescind the agreement upon discovering the fraudulent nature of Salman's misrepresentations and has sought to tender back the severance pay he received.

48. Based on the foregoing, the separation agreement is voidable and should be rescinded.

FOURTH CAUSE OF ACTION
(Race Discrimination in Violation of Title VII)

49. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in paragraphs "1" through "48", inclusive, as if fully set forth herein.
50. Defendants have discriminated against Plaintiff on the basis of his race in violation of Title VII by subjecting him to a hostile work environment and disparate treatment.
51. Plaintiff, an African American man, was subjected to severe and pervasive racial harassment at M&T Bank, including being denigrated and harassed by his supervisor and having white employees compare Black athletes to slaves being sold at auction. The conduct was both objectively and subjectively hostile and abusive.
52. Defendants were aware of the racist conduct through Plaintiff's multiple complaints to HR, but failed to take any corrective action, thereby condoning and ratifying the unlawful harassment.
53. Plaintiff was also subjected to disparate treatment and ultimately terminated on the basis of his race. Upon information and belief, Plaintiff's white colleagues were not subjected to the same hostile treatment and harassment.
54. Defendants' conduct created a hostile work environment that unreasonably interfered with Plaintiff's ability to perform his job duties and seriously affected his psychological well-being, as evidenced by his diagnosed anxiety disorder.
55. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including loss of past and future income, compensation and benefits, for which he is entitled to an award of damages.
56. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including depression, anxiety, humiliation, embarrassment, stress and loss of self-esteem, for which he is entitled to an award of compensatory damages.
57. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

FIFTH CAUSE OF ACTION
(Race Discrimination in Violation of Section 1981)

58. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in paragraphs "1" through "57", inclusive, as if fully set forth herein.
59. Defendants have discriminated against Plaintiff on the basis of his race in violation of Section 1981 by subjecting him to a hostile work environment, disparate treatment, and unlawful termination.
60. Plaintiff, an African American man, was subjected to severe and pervasive racial harassment at M&T Bank.

SIXTH CAUSE OF ACTION
(Race Discrimination in Violation of the NYSHRL)

61. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in paragraphs "1" through "60", inclusive, as if fully set forth herein.
62. Defendants have discriminated against Plaintiff on the basis of his race in violation of the NYSHRL by subjecting him to a hostile work environment and disparate treatment.
63. Plaintiff, an African American man, was subjected to severe and pervasive racial and racially-motivated harassment at M&T Bank by his supervisor and having white employees compare Black athletes to slaves being sold at auction. The conduct was hostile and abusive.
64. Defendants were aware of the racist conduct through Plaintiff's multiple complaints to HR, but failed to take any corrective action, thereby condoning and ratifying the unlawful harassment.
65. Plaintiff was also subjected to disparate treatment and ultimately terminated on the basis of his race. Upon information and belief, Plaintiff's white colleagues were not subjected to the same hostile treatment and harassment.
66. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including loss of past and future income, compensation and benefits, for which he is entitled to an award of damages.
67. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including depression, anxiety, humiliation, embarrassment, stress and loss of self-esteem, for which he is entitled to an award of compensatory damages.
68. Defendants' unlawful discriminatory actions were willful and malicious, for which Plaintiff is entitled to an award of punitive damages.

SEVENTH CAUSE OF ACTION
(Retaliation in Violation of Title VII)

69. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in paragraphs "1" through "68", inclusive, as if fully set forth herein.
70. Plaintiff engaged in protected activity under Title VII by complaining to M&T Bank's HR department about the racial discrimination and harassment he was experiencing.
71. Defendants were aware of Plaintiff's complaints, as the meetings were attended by Salman and Torres, who took detailed notes on Plaintiff's reports of racist abuse.
72. Defendants retaliated against Plaintiff for his protected activity by abruptly terminating his employment within weeks of his complaints.
73. Defendants' retaliatory conduct was a direct and proximate result of Plaintiff's protected activity.
74. As a direct and proximate result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including loss of past and future income, compensation and benefits, for which he is entitled to an award of damages.

75. As a direct and proximate result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including depression, anxiety, humiliation, embarrassment, stress and loss of self-esteem, for which he is entitled to an award of compensatory damages.
76. Defendants' unlawful retaliatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

EIGHTH CAUSE OF ACTION
(Retaliation in Violation of Section 1981)

77. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in paragraphs "1" through "76", inclusive, as if fully set forth herein.
78. Plaintiff engaged in protected activity under Section 1981 by complaining to M&T Bank's HR department about the racial discrimination and harassment he was experiencing.
79. Defendants were aware of Plaintiff's complaints, as the meetings were attended by Salman and Torres, who took detailed notes on Plaintiff's reports of racist abuse.
80. Defendants retaliated against Plaintiff for his protected activity by abruptly terminating his employment within weeks of his complaints.
81. Defendants' retaliatory conduct was a direct and proximate result of Plaintiff's protected activity and was intended to deter him from enforcing his contractual rights.
82. As a direct and proximate result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including loss of past and future income, compensation and benefits, for which he is entitled to an award of damages.
83. As a direct and proximate result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including depression, anxiety, humiliation, embarrassment, stress and loss of self-esteem, for which he is entitled to an award of compensatory damages.
84. Defendants' unlawful retaliatory actions constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiff is entitled to an award of punitive damages.

NINTH CAUSE OF ACTION
(Retaliation in Violation of the NYSHRL)

85. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in paragraphs "1" through "84", inclusive, as if fully set forth herein.
86. Plaintiff engaged in protected activity under the NYSHRL by complaining to M&T Bank's HR department about the racial discrimination and harassment he was experiencing.
87. Defendants were aware of Plaintiff's complaints, as the meetings were attended by Salman and Torres, who took detailed notes on Plaintiff's reports of racist abuse.
88. Defendants retaliated against Plaintiff for his protected activity by abruptly terminating his employment within weeks of his complaints.
89. Defendants' retaliatory conduct was a direct and proximate result of Plaintiff's protected activity.

90. As a direct and proximate result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including loss of past and future income, compensation and benefits, for which he is entitled to an award of damages.
91. As a direct and proximate result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including depression, anxiety, humiliation, embarrassment, stress and loss of self-esteem, for which he is entitled to an award of compensatory damages.
92. Defendants' unlawful retaliatory actions were willful and malicious, for which Plaintiff is entitled to an award of punitive damages.

PRAYER FOR RELIEF WHEREFORE,

Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A. A declaratory judgment that the separation agreement between Plaintiff and Defendants is void and unenforceable due to duress, undue influence, and fraudulent inducement;

B. An injunction ordering Defendants to rescind the separation agreement and remove any negative references from Plaintiff's personnel file;

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages incurred as a result of Defendants' unlawful actions;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages incurred as a result of Defendants' unlawful actions;

E. An award of punitive damages in an amount to be determined at trial;

F. An award of costs that Plaintiff has incurred in this action, including but not limited to expert witness fees, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

G. Such other and further relief as the Court may deem just and proper.

JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: Buffalo, New York
August 15, 2024

S/ ISAIAH THOMAS NEW
Plaintiff