UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ISAIAH THOMAS NEW,

        Plaintiff,

    v.

M&T BANK CORPORATION et al.,

        Defendants.

_____

21-CV-1186-LJV
DECISION & ORDER

     On November 2, 2021, the pro se plaintiff, Isaiah Thomas New, commenced this action for alleged discrimination and retaliation against his former employer, M&T Bank Corporation ("M&T Bank"), and several associated entities and individuals (collectively, the "defendants").  Docket Item 1.[1]  After New amended his complaint, Docket Item 6, the defendants moved to dismiss the amended complaint, Docket Item 11.  New then responded, Docket Item 17, and this Court found that the amended complaint was subject to dismissal but granted New leave to amend, *New v. M&T Bank Corporation*, 2024 WL 22734 (W.D.N.Y. Jan. 2, 2024).

     New did not so, instead moving for "expedited discovery."  Docket Item 26.  The Court denied that motion but gave New another opportunity to amend the complaint. Docket Item 28.  New still did not amend after that order, this time moving for

_____

[1] More specifically, New's complaint named M&T Bank Corporation, Manufacturers and Traders Trust Company, Arthur Salman, and several John Does as defendants.  *See* Docket Item 1.  New's second amended complaint added claims against Francisco Torres but no longer named Manufacturers and Traders Trust Company as a defendant.  *See* Docket Item 34.

reconsideration of the order denying expedited discovery or, in the alternative, asking this Court to certify that order for interlocutory appeal. Docket Item 29. The Court denied that motion and ordered New, who by then had been given several extensions of time to amend, to file a second amended complaint no later than August 30, 2024. Docket Item 32 at 3.[2]

New finally filed his second amended complaint, Docket Item 34, which the defendants moved to dismiss, Docket Item 36. Before responding to that motion, however, New again moved for reconsideration of both this Court's prior order holding that his first amended complaint was subject to dismissal and its later order denying his motion for expedited discovery. Docket Item 37. In the alternative, New again sought "permission to file an interlocutory appeal." *Id.* at 3-4. Separately, New moved for "expedited discovery" yet again, Docket Item 40, which the defendants opposed, Docket Item 42.

The Court denied all New's requests but, in light of his pro se status, gave "him one more chance" to respond to the defendants' motion to dismiss the second amended complaint. Docket Item 44 at 7-8. New then moved under Federal Rule of Civil Procedure 12(d) to convert the defendants' motion to dismiss into a motion for summary judgment and, once converted, to "[g]rant limited discovery . . . for [him] to oppose [the d]efendants' motion." Docket Item 45. The defendants filed a reply in further support of their motion to dismiss, Docket Item 46, arguing, among other things, that if the Court were to consider New's conversion motion, it should be rejected "as substantively baseless," *id.* at 6 (bolding and underlining omitted).

---

[2] Page numbers in docket citations refer to ECF pagination.

New then responded to the motion to dismiss his second amended complaint. Docket Item 48.  That response was not timely, but because New is proceeding pro se, the Court will consider it.  Nevertheless, for the reasons that follow, New's motion to convert the defendants' motion to dismiss into a motion for summary judgment, Docket Item 45, is DENIED, and the defendants' motion to dismiss New's second amended complaint, Docket Item 36, is GRANTED.

## BACKGROUND[3]

New is a Black man who "was hired by M&T Bank in 2017 in the bank's Buffalo, New York headquarters."  Docket Item 34 at ¶ 12.  He has "a bachelor's degree in

---

[3] On a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  The following facts are primarily taken from New's second amended complaint, Docket Item 34.

In its prior decision, the Court advised New that "any second amended complaint **must include all allegations against each of the defendants** so that the second amended complaint stands alone as the only complaint that the defendants must answer in this action."  *New v. M&T Bank Corp.*, 2024 WL 22734, at *7 (W.D.N.Y. Jan. 2, 2024).  And the Court also advised New that "an amended complaint is intended to **completely replace** the prior complaint in the action and . . . 'renders [any prior complaint] of no legal effect.'"  *Id.* (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) (alteration in original)).

Nevertheless, New's second amended complaint is significantly shorter than the prior complaint and is missing many of the factual allegations contained in that document.  *Compare* Docket Item 6 at ¶¶ 16-92, *with* Docket Item 34 at ¶¶ 12-26.  In these situations, courts often consider facts alleged in pro se litigants' prior complaints out of deference to their pro se status.  *See Briggs v. SCO Family of Serv.*, 2021 WL 7209010, at *2 (E.D.N.Y. Oct. 20, 2021) (collecting cases).  But here, as the defendants correctly observe, New happens to have omitted some of the key facts that the Court considered in its prior decision, *see* Docket Item 36-3 at 13-14.  Moreover, as the Court will discuss below, New now contradicts a fact from the first amended complaint that was central to the Court's prior decision.

economics from an Ivy League University," and during his time at M&T Bank he worked

as a "Management Trainee and Corporate Analyst."  Docket Item 6 at ¶¶ 5, 10.  New

was "the only [B]lack employee" out of "approximately 75 staff" members on the floor

where he worked, *id.* at ¶ 7, and he was "one of less than eight" Black employees "in

the entire 350-person Finance Division," *id.* at ¶ 8.

  "From the start of his employment, [New] was subjected to severe and pervasive

racial harassment by his white colleagues."  Docket Item 34 at ¶ 13.  For example, "[i]n

one particularly egregious incident," on the day after Martin Luther King Jr. Day in 2018,

"a group of white male employees gathered around [New]'s cubicle and compared Black

athletes to slaves being sold at auction."  *Id.* at ¶ 14.  New's direct supervisor (who is

white) also "repeatedly called[,] denigrated[,] and verbally harassed [New] in front of

---

  "In 'special circumstances,' [a c]ourt may disregard allegations in an amended complaint to the extent they contradict allegations in prior versions of the complaint." *Christian v. TransPerfect Global, Inc.*, 2018 WL 4571674, at *2 (S.D.N.Y. Sept. 24, 2018).  "[T]he more usual and benevolent option," however, "is to accept the superseded pleadings but allow the factfinder to consider the earlier pleadings as admissions in due course."  *Barris v. Hamilton*, 1999 WL 311813, at *2 (S.D.N.Y. May 17, 1999).

  Although the defendants are correct that the Court may take judicial notice of its own orders and the prior pleadings in this action, Docket Item 36-3 at 11, 14 n.1 (citing *Rosado-Acha v. Red Bull Gmbh*, 2016 WL 3636672, at *7 (S.D.N.Y. June 29, 2016)), the Court is mindful of the fact that New is proceeding pro se and may not have intended to omit (or contradict) facts from his prior pleading. Accordingly, the Court accepts New's second amended complaint as the operative pleading and occasionally refers to the first amended complaint only to give context to New's claims.  The Court will not consider the facts from New's first amended complaint or the contradictions between the two complaints in resolving the instant motion to dismiss.  And because the facts alleged in New's second amended complaint still fail to plausibly allege fraudulent inducement, duress, undue influence, or that his signing the separation agreement was not knowing and voluntary, none of that affects the Court's decision in any way.

other employees," *id.* at ¶ 13, but "did not treat other bank employees . . . in such a manner," Docket Item 6 at ¶ 19.

New repeatedly raised concerns about this harassment to M&T Bank's human resources department.  Docket Item 34 at ¶ 15.  Eventually, in February 2018, New met with M&T Bank Deputy Counsel Arthur Salman "to report the 'slave auction' incident and other harassment by his supervisor and colleagues."  *Id.*; *see also* Docket Item 6 at ¶ 14 (identifying Salman's title).  New says that Salman said to "call [him] when it happens again" but "took no action to stop or prevent the wrongdoing."  *See* Docket Item 6 at ¶¶ 36-37.  "At the end of April 2018, [New] again met with Salman to complain about ongoing conduct at work."  *See* Docket Item 34 at ¶ 16.  At that meeting, Francisco Torres, "an in-house lawyer for M&T Bank . . . took detailed notes as [New] described the conduct."  *See id.*

In June 2018, New "was abruptly terminated . . . in a meeting orchestrated by Salman."  *Id.* at ¶ 17.[4]  "During this meeting, Salman confined [New] to a conference room and told him could not leave until he signed a separation agreement waiving his right to sue M&T Bank."  *See id.* at ¶ 18.  "[New] was forced to sit in the room for hours while his white colleagues packed up his personal belongings at his desk."  *See id.*  The separation agreement included the following language:

> You, for and in consideration of the promises set forth in this Agreement, hereby agree to release and discharge, and not to institute any suit or action . . ., against M&T Bank . . ., on your behalf and on behalf of any person or entity claiming by or through you, from any and all claims of any kind, known and unknown, which you may now have or have ever had against M&T

---

[4] In the first amended complaint, New said that Salman told him he was being terminated due to "performance issues" and "trust issues," which New alleged was pretextual.  Docket Item 6 at ¶¶ 46, 59.  New's second amended complaint does not say anything about the reason given for his termination.

Bank, including claims . . . arising from your employment with M&T Bank or the termination of your employment with M&T Bank, whether based on contract, tort, statute, local ordinance, regulation[,] or any comparable law in any jurisdiction ("Released Claims"). By way of example and not in limitation, the Age Discrimination in Employment Act of 1967 . . ., Title VII of the Civil Rights Act of 1964 . . ., the Americans with Disabilities Act of 1990 . . ., the Equal Pay Act of 1963 . . ., the New York Human Rights Law, and the Family and Medical Leave Act of 1993 . . ., as well as any claims asserting wrongful termination, breach of contract, breach of the covenant of good faith and fair dealing, negligent or intentional infliction of emotional distress, negligent or intentional misrepresentation, . . . and any other federal, state or local law, rule, regulation, executive order[,] or guidelines relating to discrimination . . . .

This Agreement covers both claims that you know about and those that you may not know about at this time. This Agreement does not waive or release any rights or claims that may arise *after* you sign this Agreement.

Docket Item 11-3 at 4-5 (emphasis in original). It further provided that New could "revoke" the agreement "within seven [ ] calendar days" of signing it. *Id*. at 2.

As New reviewed the separation agreement, he asked Salman "what he thought of the many claims" New had raised. Docket Item 6 at ¶ 76. Salman responded, "[T]hey're all in your head." *Id.* (emphasis omitted); *see also* Docket Item 34 at ¶ 19 ("Salman falsely told [New] that his complaints were 'all in his head' and had no merit."). This was despite the fact that Salman "had attended multiple meetings with [New] where he reported specific, egregious acts of racial harassment." Docket Item 34 at ¶ 19. "After several hours . . . [New] was escorted out of the building." *See id.* at ¶ 21. New did not sign the separation agreement before he left M&T Bank's offices that day. *Id.*

New had been given until June 15, 2018, to sign the separation agreement, Docket Item 11-3 at 6, but he requested and received a five-day extension, Docket Item 6 at ¶ 82. "[O]ver the next two weeks," Salman contacted New by email and phone

6

about the separation agreement.  Docket Item 34 at ¶ 22.  For example, "[i]n one email

two weeks after termination and escort out of M&T Bank, Salman wrote 'any word on

this, Isaiah?,'" presumably referring to the separation agreement.  *See id*.  Salman also

"urged [New] by phone to sign" the separation agreement.  *Id*.  During this time period,

New "was experiencing severe anxiety and depression."  *Id*. at ¶ 23.

New eventually signed the agreement.  *Id*. at ¶ 24.  In exchange, he received

"two months' pay."  *Id*.  Almost three years later, in February 2021, New "read a news

article about a case in which an African American employee at a different company

experienced . . . severe and pervasive conduct similar to that experienced by [New] at

M&T Bank."  *Id*. at ¶ 25.  "After reading th[e] article and the stark similarities in the

treatment of another [B]lack employee in a corporate environment, [New] promptly

contacted M&T Bank to rescind the [separation] agreement and tender back the

severance pay he had received."  *Id*. at ¶ 26.  New then commenced this action.  *See*

Docket Item 1.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully."  *Id*. (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I.    THE MOTION TO CONVERT

The Court first addresses New's motion to convert the defendants' motion to dismiss his second amended complaint into a motion for summary judgment, Docket Item 45.  According to New, the defendants' motion to dismiss "improperly relies on the [s]eparation [a]greement," and this Court therefore should convert it into a motion for summary judgment under Rule 12(d).  *See id.* at 1-3.  New also says that because the "validity of the agreement is in direct dispute" as a result of his allegation that his signature was obtained through duress and fraudulent inducement, it is improper to consider the separation agreement at this stage.  *See id.* at 2-3.

"It is true that Rule 12(d) of the Federal Rules of Civil Procedure provides that if, on a Rule 12(b)(6) motion, the defendants present 'matters outside the pleadings' and the court proceeds to consider those matters, the defendants' 'motion must be treated as one for summary judgment under Rule 56.'  Fed. R. Civ. 12(d)."  *Lally v. Klick USA, Inc.*, 2025 WL 786576, at *3 (S.D.N.Y. Mar. 11, 2025) (citing *Mitchell v. Drew*, 154 F. App'x 235, 237 (2d Cir. 2005) (summary order)).   But generally speaking, "[i]n considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (collecting cases).  "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby

rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

As the defendants note, Docket Item 46 at 6 (citing *Cybercreek Ent., LLC v. U.S. Underwriters Ins. Co.*, 2016 WL 7374233 at *1 n.1 (W.D.N.Y. Dec. 20, 2016)), courts may consider documents referenced in or integral to a complaint when ruling on a motion to dismiss without converting that motion into one for summary judgment. *See, e.g.*, *William Gotlieb Mgmt. Co., LLC v. Carlin*, 2024 WL 1311854, at *2 (S.D.N.Y. Mar. 26, 2024) (courts may consider "documents . . . attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice" without converting motion to dismiss "into a motion for summary judgment governed by Rule 56" (first quoting *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020), then citing Fed. R. Civ. P. 12(d)); *Wen v. N.Y.C. Reg'l Ctr.*, 695 F. Supp. 3d 517, 534 (S.D.N.Y. 2023) (documents were referenced in and integral to complaint, and thus could be considered without converting motion to dismiss into motion for summary judgment, where complaint "[wa]s replete with references" to documents and documents "form[ed] the very foundation of . . . fraudulent inducement claims").

In light of the foregoing, the key question is whether the separation agreement is referenced in or integral to New's second amended complaint. In opposing New's conversion motion,[5] the defendants say that New refers to the separation agreement throughout his second amended complaint, making conversion of their motion to dismiss into a motion for summary judgment unnecessary. *See* Docket Item 46 at 7.

---

[5] After receiving the defendants' submission raising their opposition to New's conversion motion, the Court issued a text order giving him two weeks to reply, *see* Docket Item 47, but he did not do so.

A document is incorporated by reference when "the complaint . . . make[s] 'a clear, definite[,] and substantial reference to the document[ ].'" *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003)).  "Limited quotation of a document or a mere passing reference to a document outside the complaint does not incorporate the document into the complaint."  *Pucilowski v. Spotify USA, Inc.*, 2022 WL 836797, at *3 (S.D.N.Y. Mar. 21, 2022) (alteration, citations, and internal quotation marks omitted).  A document is integral to a complaint when the plaintiff has "(1) actual notice of the extraneous information and (2) relied upon the document in framing the complaint." *DeLuca*, 695 F. Supp. 2d at 60 (alteration, citation, and internal quotation marks omitted).

Here, the complaint refers frequently and repeatedly to the separation agreement, *see* Docket Item 34 at ¶¶ 3-4, 18-22, 24, 26, 28-32, 34-39, 41-47, but it does not include specific quotes.  Regardless, and even if the absence of a quote means that the separation agreement is not incorporated by reference, it undoubtedly is integral to the second amended complaint.  Indeed, the complaint explicitly and repeatedly asks the Court to rescind the separation agreement.  *See, e.g., id.* at ¶¶ 1, 4, 27-32, 33-39, 40-48.

District courts in this Circuit routinely find a separation agreement to be integral to a plaintiff's employment-related complaint even when the plaintiff has not attached it to the complaint.[6]  *See, e.g.*, *Pucilowski*, 2022 WL 836797, at *3 (separation agreement

---

[6] The defendants note that the cases New offers in his motion are inapposite because they involved truly "extrinsic evidence," such as trial testimony, deposition

"sufficiently integral" to complaint where plaintiff alleged "she was fraudulently induced" into signing it); *Westbrooke v. Bellevue Hosp. Ctr.*, 2018 WL 4189514, at *3 (S.D.N.Y. Aug. 31, 2018) (separation agreement integral to complaint that included information from separation agreement); *DiBartolo v. Segal Grp., Inc.*, 2025 WL 2172643, at *3 (S.D.N.Y. July 31, 2025) (separation agreement integral to complaint even when plaintiff did not affirmatively refer to it); *Culmone-Simeti v. N.Y.C. Dep't of Educ.*, 2018 WL 3384437, at *2 n.4 (July 11, 2018) (settlement agreement referenced in and integral to complaint when plaintiff alleged that she had been "forced" to "sign an agreement to resign" (citation and internal quotation marks omitted)).  And that has been the case even where, as New does in his second amended complaint, a plaintiff claimed fraudulent inducement or duress.  *See Pucilowski*, 2022 WL 836797, at *6 (fraudulent inducement); *Westbrooke*, 2018 WL 4189514, at *3, 5-6 (duress).

The separation agreement at issue made New's termination, which he alleges violated state and federal law, final.  *See* Docket Item 11-3 at 2.  Moreover, New explicitly cites the consequences of the separation agreement—waiving his right to sue M&T Bank—and notes his prior attempts to rescind it.  *See* Docket Item 34 at ¶¶ 3, 26.

---

testimony, witness declarations, or union codes that are not analogous to the separation agreement in this case.  *See* Docket Item 46 at 7.  This Court agrees.

In particular, the Court does not read *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) for New's stated proposition that "[w]here the validity of the agreement itself is the subject of the action, the agreement may not properly be considered on a motion to dismiss."  *See* Docket Item 45 at 3.  Although *Chambers* did vacate a district court's order on the grounds that union codes not mentioned in the amended complaint were not integral to it*, see* 282 F.3d at 153-54, it also held that other documents—contracts relevant to the litigation— were "integral" to the complaint, *id.* at 153; *see also id.* at 153 n.4 (noting that amended complaint was "replete with references to the contracts").

And as noted earlier, New explicitly asks this Court to rescind the agreement. *Id.* at ¶¶ 1, 4, 27-32, 33-39, 40-48. New thus "relie[s] heavily upon the [separation agreement's] terms and effects" in his second amended complaint, "rendering the document integral." *DiBartolo*, 2025 WL 2172643, at *3 (quoting *Uwakwe v. Bridging Access to Care, Inc.*, 2017 WL 1048070, at *3 (E.D.N.Y. Mar. 16, 2017)) (transition agreement formalizing plaintiff's termination was not referenced in complaint but was nevertheless integral, making conversion to summary judgment unnecessary).[7]

In concluding that the separation agreement is, at the very least, integral to New's second amended complaint, the Court also notes that "generally, the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)). When a plaintiff has notice and has relied upon the documents in question in framing the complaint, the Second Circuit has instructed that "the necessity of translating a Rule 12(b)(6) motion into one [for summary judgment] is largely dissipated." *See id.* (quoting *Cortec*, 949 F.2d at 48). Here, where New himself acknowledges that he attempted to rescind the separation agreement prior to commencing this action, Docket Item 34 at ¶ 26, and where he seeks rescission now, *id.* at ¶¶ 1, 4, 27-32, 33-39, 40-48, he cannot complain of a lack of notice. The Court therefore will consider the separation agreement in analyzing the defendants' motion to

---

[7] When a document is integral to a complaint, "it must be clear on the record that no dispute exists regarding the authenticity, accuracy, or relevance of the document." *Pucilowski*, 2022 WL 836797, at *3 (citing *DeLuca*, 695 F. Supp. 2d at 60). New does not dispute the separation agreement's authenticity and accuracy, and its relevance to New's ability to pursue his claims is self-apparent.

dismiss and DENIES New's motion to convert the motion to dismiss into a motion for summary judgment.

## II.    THE MOTION TO DISMISS

In moving to dismiss New's first amended complaint, the defendants argued that New had "released all employment-related claims" when he signed the separation agreement.  Docket Item 11-1 at 5.  In response, New said that his claims were not barred because he "was fraudulently induced into [signing] the separation agreement," and he pointed to Salman's statement that his claims were all in his head.  Docket Item 17 at 3, 5.

As the Court noted in its prior decision and order, "[a] plaintiff alleging fraudulent inducement must show that '(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'"  *New*, 2024 WL 22734, at *3 (quoting *NRW, Inc. v. Bindra*, 775 F. App'x 22, 24 (2d Cir. 2019) (summary order)).  And the Court concluded that New's first amended complaint failed to plausibly allege two elements of that claim—that Salman's statement was a material false representation, *New*, 2024 WL 22734, at *4, and that New reasonably relied on that statement, *id.* at *5.  The Court also concluded that the separation agreement was enforceable because New signed it knowingly and voluntarily.  *See id*. at *7.

Because of New's pro se status, the Court nevertheless permitted him to file an amended complaint "showing either (1) that he reasonably—and actually—relied on a material misrepresentation of fact made by the defendants *other* than Salman's

statement that New's claims were all in his head, or (2) that the waiver of his claims was not knowing and voluntary." *New*, 2024 WL 22734, at *7 (emphasis added). New has now filed a second amended complaint, Docket Item 34, which raises for the first time claims that the separation agreement should be rescinded as a result of duress and undue influence, *see id.* at ¶¶ 27-39.

In moving to dismiss this complaint, the defendants argue that it "fails to identify a misrepresentation other than Salman's non-actionable expression of opinion, and . . . states no facts negating [New]'s knowing and voluntary execution of the [s]eparation [a]greement." Docket Item 36-3 at 12. Moreover, the defendants say that New's second amended complaint fails to plausibly allege duress and undue influence. *Id.* at 15-17. This Court agrees with all those arguments.

### A.    Fraudulent Inducement

As the Court noted in its earlier decision, "[f]or purposes of fraudulent inducement, a material false representation must be 'either a misrepresentation or [ ] material omission of a *fact*." *New*, 2024 WL 22734, at *3 (quoting *Robinson v. Deutsch Bank Tr. Co. Ams.*, 572 F. Supp. 2d 319, 322 (S.D.N.Y. 2008) (emphasis added and citation omitted)). Because "[e]xpressions of mere opinion or puffery are not actionable representations of fact sufficient to state a claim for fraud," the Court concluded that Salman's statement that New's claims were all in his head was not a material false representation. *See New*, 2024 WL 22734, at *3-4 (citation and internal quotation marks omitted).

Moreover, the Court concluded that New had "not plausibly alleged that he reasonably relied on Salman's statement"; indeed, the Court noted that the sequence of

events in the first amended complaint "suggest[ed] that New was skeptical of Salman's statement." *New*, 2024 WL 22734, at *5. Crucially, "New did not sign the separation agreement immediately after he heard Salman's statement . . . or even by the original deadline M&T [Bank] set." *Id.* at *4. In fact, the Court noted, New did not sign "the separation agreement [until] more than two weeks after Salman made the statement that allegedly induced New to release his claims." *Id.* (citing Docket Item 11-3 at 6).

In his second amended complaint, New does not allege any other statements that could be considered a "material false representation." *See generally* Docket Item 34. Instead, he reiterates his prior argument that Salman's statement was a material false representation because it was "a knowingly false statement of present fact." Docket Item 48 at 2; *see also* Docket Item 34 at ¶¶ 40-48. New argues that this is the case because he had met with Salman multiple times and Salman therefore "had detailed knowledge" of New's complaints. *See* Docket Item 48 at 2-3; *see also* Docket Item 34 at ¶ 43 (alleging that because "Salman had attended multiple meetings with [New] in which [New] reported specific, egregious acts of racial discrimination . . . Salman therefore knew that [New]'s complaints were supported by concrete evidence and had a valid legal basis").

None of that does anything to change the Court's conclusion that Salman's statement was not a material false representation. As stated in the previous decision, Salman's "statement was an expression of opinion about the merit of New's potential legal claims," and not, as New argued, a "'hybrid'" of fact and opinion. *See New*, 2024 WL 22734, at *4. In reaching that earlier conclusion, the Court rejected New's argument that Salman's experience had led "New to believe that Salman had 'analyzed data,

conducted an assessment, and reach[ed] a fact-based conclusion,'" observing that New had not "allege[d] facts suggesting he believed that Salman conducted such an assessment." *Id.* On the contrary, the Court noted, New had "allege[d] that Salman took no action to investigate his complaints." *See id.*

The second amended complaint now vaguely alleges that Salman actually did investigate New's complaints. *See* Docket Item 34 at ¶ 43. Even though, as discussed earlier, the second amended complaint is now the operative pleading and the Court does not construe any inconsistencies between the two against New, a single conclusory allegation does not lead the Court to revisit its earlier conclusion. New still does not allege why Salman's statement, even if he had investigated New's complaints, was fact based instead of an opinion. Nor does New allege what Salman did to investigate his claims, how he knew Salman conducted an investigation, or in fact, whether Salman did anything at all beyond meeting with New.

At its core, New's argument is that because he believes that his complaints raised valid claims, the fact that he told Salman about those complaints meant that Salman must have believed them and that anything Salman said about his complaints necessarily involved a "fact." Stated another way, New argues that because he told Salman about his complaints, anything Salman said about them could not have been an opinion. That circular logic does not establish that Salman made a material misrepresentation of fact.

Furthermore, New's second amended complaint does not add any facts showing that his alleged reliance on Salman's statement (or any statement by the defendants, for that matter) was reasonable. In fact, New's claim that he felt "pressured" from "the

highly coercive environment" seems to suggest anything but reasonable reliance on those pressuring him.

For all of those reasons, and for the reasons stated in this Court's prior decision and order, *New*, 2024 WL 22734, at *3-5, New's second amended complaint does not plausibly plead that he was fraudulently induced into signing the separation agreement.

### B.　　Voluntary Release of Claims

In addition to rejecting New's fraudulent inducement argument, the Court also previously concluded that "New entered into the separation agreement knowingly and voluntarily" but permitted him to amend his complaint to allege, if possible, "facts showing . . . that the waiver of his claims was not knowing and voluntary." *New*, 2024 WL 22734, at *7.

As that decision and order explained, courts in this Circuit consider a number of factors "when evaluating whether a release was entered into knowingly and voluntarily." *Id.* at *6. Those factors include:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of [the] plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, . . . 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law . . ., [and 7)] whether an employer encourages or discourages an employee to consult an attorney . . . and whether the employee had a fair opportunity to do so.

*Bormann v. AT&T Commc'ns, Inc.*, 875 F.2d 399, 403 (2d Cir. 1989) (citations omitted). Weighing those factors and considering the totality of the circumstances, the Court previously addressed New's education and experience, the clarity of the agreement, the time he had to review the agreement and the opportunity he had to consult with

17

counsel, the consideration he received for executing the separation agreement, and the fact that he did not participate in drafting the terms of the agreement. *New*, 2024 WL 22734, at *6-7. The Court found that even though New did not help draft the agreement, he received "benefits to which [he] was not otherwise entitled," *see Phillips v. Orleans County*, 2019 WL 3088051, at *7 (W.D.N.Y. July 15, 2019), received an extension of time to consider the agreement, "had a fair opportunity to consult counsel" (and did in fact attempt to do so), and is highly-educated—all facts that weighed in favor of enforcing the agreement. *New*, 2024 WL 22734, at *5-7. And the Court noted that was especially true when coupled with the clear language of the release. *Id.* at *6.

None of what New alleges in his second amended complaint changes that conclusion. Although New now omits the prior allegations that he is highly educated and that he sought legal counsel before signing the separation agreement, *compare* Docket Item 6 at ¶¶ 16-92, *with* Docket Item 34 at ¶¶ 12-26, he still alleges that he received severance payments and acknowledges that he did not sign the separation agreement immediately, *see* Docket Item 34 at ¶¶ 22-24. Even more basically, New does not allege that he did not understand the separation agreement or its effect. *See generally* Docket Item 34; *see also Pucilowski*, 2022 WL 836797, at *4 (the clarity of the agreement "may be the most important" *Bormann* factor).

New's allegation that "forcing" him "to watch as white employees packed up his belongings" made him think that he "had no choice but to accept his termination and sign the agreement," Docket Item 34 at ¶ 20, also is unconvincing. Accepting that as true and drawing all inferences in New's favor, that does not change the fact that New was free to leave the meeting without signing the separation agreement, *see id*. at ¶ 21;

18

indeed, that is precisely what he did, *see id.*  Moreover, although New alleges that

Salman "continued to pressure" him to sign the agreement during the two weeks

between the meeting and his signing, *id.* at ¶ 22, the Court fails to see how the

statements New alleges, Salman's email asking for an update and his reference to M&T

Bank's close relationship with Hodgson Russ LLP in a phone call, change the above

analysis or otherwise demonstrate how the separation agreement was not accepted

voluntarily and knowingly.

For all those reasons, New's second amended complaint also fails to plausibly

allege that he did not sign the separation agreement knowingly and voluntarily.

### C.    New's Additional Claims

New raised two other claims for the first time in his second amended complaint:

duress and undue influence.  *See* Docket Item 34 at ¶¶ 27-39.  In fact, New says that

this case presents "textbook claims for duress and undue influence," Docket Item 48 at

3, and he argues that the defendants exerted pressure that deprived him of his free will

and engaged in "mental coercion" to obtain his signature, *id.* at 4.  For that reason, he

says that the separation agreement "should be rescinded."  Docket Item 34 at ¶¶ 32, 39.

"District courts in this Circuit have routinely dismissed claims in amended

complaints where the court granted leave to amend for a limited purpose and the

plaintiff filed an amended complaint exceeding the scope of the permission granted."

*Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012)

(summary order).  New did that here.  But in light of New's pro se status, the Court

evaluates his new claims on the merits and concludes that neither is availing.

"In New York, '[a] contract is voidable on the ground of duress when it is established that the party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of his free will.'"[8]  *Doe v. Kogut*, 759 Fed. App'x 77, 81 (2d Cir. 2019) (summary order) (quoting *First Nat'l Bank of Cincinnati v. Pepper*, 454 F.2d 626, 632 (2d Cir. 1972)).  "[D]uress may take the form of unlawful restraint of property or [the] use of wrongful economic compulsion to force a party to yield to demands that would otherwise be rejected."  *First Nat'l Bank of Cincinnati*, 454 F.2d at 632.

"To determine whether a party lacked a meaningful choice, courts look for evidence of high pressure or deceptive tactics, as well as disparity in bargaining power."[9]  *Pallonetti v. Liberty Mut.*, 2011 WL 519407, at *5 (S.D.N.Y. Feb. 11, 2011) (citation and internal quotation marks omitted).  "[D]ifficult choices do not constitute duress."  *Joseph v. Chase Manhattan Bank, N.A.*, 751 F. Supp. 31, 36 (E.D.N.Y. 1990). "[C]ourts have found that turning down severance pay and pursuing a legal remedy against a defendant is a reasonable alternative, even if a hefty financial incentive is offered for signing a release."  *Nicomedez v. AIG*, 2012 WL 5264560, at *5 (S.D.N.Y. Oct. 16, 2012) (citation and internal quotation marks omitted).

At the very most, the facts in New's second amended complaint allege a difficult choice.  Although he faced the loss of his job when he signed the separation

---

[8] The separation agreement is "governed by the substantive and procedural laws of New York."  Docket Item 11-3 at 6.

[9] To the extent New claims that his unequal financial position with the defendants constituted duress, "a mere demonstration of financial pressure or unequal bargaining power will not, by itself, establish economic duress."  *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011).

agreement, New always had another option: turning down the separation agreement and pursuing a legal remedy. In fact, that is exactly what he would like to do now, and he does not suggest that he did not know that then.

Moreover, although New alleges that the "pressure" he felt caused him to sign the separation agreement, *see* Docket Item 34 at ¶¶ 27-32, he does not allege any unlawful threat the defendants made, or undue pressure they placed on him, to force him to sign. The only fact he alleges that could even be considered anything like that is a vague reference to something Salman said about M&T Bank's having a close relationship with Hodgson Russ LLP (counsel for the defendants in this action). *Id.* at ¶ 22. And the Court fails to see how a statement about the bank's having capable attorneys—something New undoubtedly knew from his work at the bank—was a threat or pressure that overcame his free will.

New's allegations about being forced to sit in the conference room for hours, *id.* at ¶ 18, also are of no moment because he left the bank without signing the separation agreement that day and he did not sign the separation agreement for another two weeks, *see id.* at ¶¶ 21-22. That alone belies any claim of threats or pressure that resulted in New's execution of the agreement during the meeting at the bank. And in the two weeks that followed, New "was free to reject the terms of the [separation] agreement, which he did not." *See Figueroa v. MRM Worldwide*, 2014 WL 902953, at *10 (S.D.N.Y. Mar. 7, 2014) (duress not established where plaintiff "really needed" severance money but there was no "evidence of a wrongful threat") (citations omitted).[10]

---

[10] The Court is sympathetic to the mental health issues New discusses in his second amended complaint. But despite alleging that M&T Bank knew about the mental health-related workplace accommodation he requested, Docket Item 34 at ¶ 23,

So any suggestion that New was pressured to sign on the day that he was presented with the proposed agreement is irrelevant.

The second amended complaint also fails to plausibly allege that New signed the separation agreement only because of the defendants' undue influence, "a type of duress." *See Lamberti v. Motorola Sols., Inc.*, 2014 WL 1224501, at *11 (S.D.N.Y. Mar. 24, 2014). "To prove undue influence in New York, a party must show: '(1) the existence and exertion of an influence; (2) the effective operation of such influence as to subvert the mind at the time the transaction occurred; and (3) the execution of the transaction that, but for undue influence, would not have happened." *Met. Life Ins. Co. v. Bradway*, 2011 WL 723579, at *5 (S.D.N.Y. Feb. 24, 2011) (citation and internal quotation marks omitted). "The bar for establishing undue influence is high—the perpetrator's behavior must amount to moral coercion sufficient to restrain independent action and destroy free agency . . . ." *Id.* (alterations, citation, and internal quotation marks omitted). The party asserting undue influence "must demonstrate that it was

---

and saying for the first time in his response that he "broke down in[] tears" during his separation meeting, Docket Item 48 at 4, New does not suggest that Salman knew about those mental health issues, much less that he took advantage of them to get New to sign the separation agreement.

Finally, to the extent New is claiming that he did not have the mental capacity to sign the separation agreement due to those conditions, "the fact that he suffered from some degree of mental incapacity does not, by itself, render the contract void." *Wells v. New York City Dep't of Corr.*, 804 F. App'x 88, 90-91 (2d Cir. 2020) (summary order). Instead, New would need to establish that his mind "was so affected as to render him wholly and absolutely incompetent to comprehend and understand the nature of the transaction" or that signing the separation agreement "was the result of impulsive or irrational behavior beyond his control and that [the] defendants knew, or should have known, that he did not possess the proper capacity to enter into contracts." *Id.* at 91 (citation and internal quotation marks omitted). New alleges no such facts in his second amended complaint.

manipulated into signing [the] contract as a consequence of conduct worse than even pressure, no matter how bad[,] because undue influence is tantamount to a species of cheating." *Lan v. AOL Time Warner, Inc.*, 2012 WL 13388978, at *6 (S.D.N.Y. Aug. 13, 2012) (quoting *In re Yohannes*, 2007 WL 2034301, at *4 (S.D.N.Y. July 17, 2007)).

New alleges that Salman's conduct at his termination meeting "was calculated to overwhelm [New]'s free will and induce him to sign the [separation] agreement." Docket Item 34 at ¶ 36. But New does not connect those allegations to his actual signing of the separation agreement more than two weeks later. What is more, the only contacts alleged between New and the defendants during those two-plus weeks are an email asking for an update and a vague phone call from Salman. Docket Item 34 at ¶ 22. So New's version of events does not raise a plausible inference that he signed the separation agreement only because of the defendants' undue pressure and influence. *Cf. Tantaros v. Fox News Network, LLC*, 2025 WL 2242897, at *6 (S.D.N.Y. Aug. 6, 2025) ("troubling allegations of sexual harassment and retaliation" were insufficient to establish undue influence where plaintiff "fail[ed] to connect them to the contract negotiations such that they precluded her" from exercising free will in signing contract).

Moreover, establishing "[u]ndue influence 'requires unfair persuasion by a person who, because of his relation to the victim, is justifiably assumed by the victim at the time to be one who will not act in a manner that is inconsistent with the victim's welfare.'" *Reid v. IBM Corp.*, 1997 WL 357969, at *6 (S.D.N.Y. June 26, 1997) (quoting *Joseph*, 751 F. Supp. at 34); *see also Brown v. 7-Eleven Incorp.*, 2020 WL 8839752, at *8 (N.D.N.Y. Dec. 15, 2020) (lawyer for employer not somebody who plaintiff could justifiably assume would act in manner consistent with plaintiff's welfare). New's

relationship with Salman, who he knew to be an in-house legal employee for the company terminating his employment, was anything but that type of relationship.

And if all that were not enough, New did not promptly attempt to rescind the separation agreement, a fact that other courts have found "fatal" to duress or undue influence claims. *See Long v. Corning Inc.*, 2020 WL 1467278, at *6 (W.D.N.Y. Mar. 26, 2020); *see also Cavelli v. N.Y.C. Dist. Council of Carpenters*, 816 F. Supp. 2d 153, 164 (E.D.N.Y. 2011) ("Because a contract executed under duress is voidable (rather than void), 'the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so.'" (quoting *VKK Corp. v Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001))); *Lan*, 2012 WL 13388978, at *6 (plaintiff's "failure to seek rescission promptly on the basis of undue influence or duress constitutes a waiver barring his claims").[11]  In fact, New did not attempt to rescind the agreement for almost three years, *see* Docket Item 34 at ¶¶ 24-26, significantly longer than other courts have found to have been too long.  *See, e.g.*, *Long*, 2020 WL 1467278, at *2, *6 (plaintiff, like New, was given "seven days after signing to revoke" separation agreement and failure to do so was "fatal to his duress

---

[11] New cites *Sosnoff v. Carter*, 165 A.D. 2d 486, 491-92, 568 N.Y.S. 2d 43, 46-47 (1st Dep't 1991), where a 15-month delay did not waive the defense of economic duress, to argue that his delay does not bar his claims.  *See* Docket Item 48 at 4.  But 15 months is less than half the time it took New to attempt to repudiate the settlement agreement.  In addition, *Sosnoff* specifically based its reasoning on the principle that where a party continues to be the subject of duress, it "has no obligation to repudiate until the duress has ceased."  *Sosnoff*, 165 A.D. 2d at 492, 568 N.Y.S. 2d at 47.  Here, New does not allege that he was the subject of any duress after he signed the separation agreement.  In fact, he suggests that he signed the separation agreement to escape the alleged duress, *see* Docket Item 34 at ¶ 24, and does not allege any contact with the defendants after he signed other than contact that he initiated when attempting to rescind the agreement, *see id.* at ¶ 26.

allegation"); *Cavelli*, 816 F. Supp. 2d 153, 164 (E.D.N.Y. 2011) ("Courts have held that delays as short as six months have constituted forfeiture of a duress claim.").

For all those reasons, New's new claims of duress and undue influence also fail.

### D.    Leave to Amend

Generally, a court "should not dismiss [a pro se] complaint"—or any of its claims—"without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  New was given that opportunity after this Court's prior decision, but the allegations in his second amended complaint—drafted with the benefit of this Court's analysis—still fail to cure the previously identified deficiencies.  What is more, the Court fails to see how New can plausibly allege his new claims for duress and undue influence in light of the facts that he has presented to the Court, especially because of the time that elapsed before he attempted to rescind the separation agreement.  In light of the foregoing, the Court dismisses New's second amended complaint without leave to amend.

### CONCLUSION

For the reasons stated above, the Court DENIES New's motion to convert the defendants' motion to dismiss into a motion for summary judgment, Docket Item 45, and

GRANTS the defendants' motion to dismiss his second amended complaint, Docket Item 36.[12] The Clerk of the Court shall close this case.

The Court hereby certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals in forma pauperis is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal in forma pauperis should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:    September 30, 2025
          Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[12] Because the Court dismisses the complaint, New's requests for the Court to "clarify" its prior orders and to appoint him counsel, Docket Item 45 at 4-7, are denied as moot.